*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 18, 2020

Plaintiff-Appellee,

v

No. 345048
Oakland Circuit Court
LC No. 2017-261731-FC

DESEAN MAURICE SMITH,

Defendant-Appellant.

Before: GADOLA, P.J., and CAVANAGH and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of first-degree felony murder, MCL 750.316(1)(b), fourth-degree arson, MCL 750.75(1), and possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced defendant to concurrent terms of life imprisonment without parole for the murder conviction and two to five years' imprisonment for the arson conviction, and a consecutive two-year term of imprisonment for the felony-firearm conviction. We affirm.

Defendant's convictions arise from the fatal shooting of Diana Pesserl during the early morning hours of December 9, 2016, in West Bloomfield, and a subsequent car fire to cover up evidence of the crime. The prosecutor presented evidence that the 18-year-old defendant was in the area to visit his friend, Jaylen Stringer, and happened upon Pesserl, who was sitting in her car outside her home. The prosecutor's theory at trial was that defendant attempted to rob Pesserl, but when she reached for his gun, defendant shot and killed her. Afterward, defendant drove her car to an abandoned school and set it on fire, with her body in the trunk. The police observed footprints that led to Stringer's house, where a gun and bullets were recovered. The bullet retrieved from Pesserl's abdomen was consistent with having been fired from the gun recovered at Stringer's house. Evidence also was presented that both defendant and Pesserl were likely contributors to DNA found on the gun, and that defendant was a likely contributor to DNA found on Pesserl's clothing. Stringer testified at trial pursuant to a plea agreement and provided details of the crime that defendant had told him. The defense asserted that the evidence was insufficient and unreliable to prove that defendant committed the crimes, and that Stringer was not credible.

-1-

## I. ADMISSION OF EVIDENCE

Defendant first argues that the trial court abused its discretion by admitting evidence of defendant's involvement in a robbery and attempted carjacking in Detroit in November 2016, approximately a month before the charged offense. Defendant argues that this evidence was inadmissible under MRE 404(b)(1). We disagree.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Thorpe*, 504 Mich 230, 251-252; 934 NW2d 693 (2019). "The decision to admit evidence is within the trial court's discretion and will not be disturbed unless that decision falls outside the range of principled outcomes." *Id*. at 252 (quotation marks and citation omitted.) "A decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *Id*. "Preliminary questions of law, such as whether a rule of evidence or statute precludes the admission of particular evidence, are reviewed de novo[.]" *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014).

At trial, the trial court permitted the prosecutor to introduce evidence that on November 14, 2016, Elizabeth Holloway was delivering pizza to a house in Detroit. A woman answered the door and, as Holloway was waiting for the woman to return, defendant came around the corner of the house and said, "I'm about to take it." As Holloway headed toward her vehicle, defendant asked for her money and brandished a gun. Holloway gave defendant approximately $40 and managed to drive away. Holloway called 911 and identified defendant in a lineup as the robber.

"At its essence, MRE 404(b) is a rule of inclusion, allowing relevant other acts evidence as long as it is not being admitted solely to demonstrate criminal propensity." *People v Martzke*, 251 Mich App 282, 289; 651 NW2d 490 (2002); see also *People v Mardlin*, 487 Mich 609, 615; 790 NW2d 607 (2010) ("the rule is not exclusionary, but is inclusionary"). Although MRE 404(b)(1) prohibits "evidence of other crimes, wrongs, or acts" to prove a defendant's character or propensity to commit the charged crime, it permits such evidence for other purposes, "such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material." *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004). Other-acts evidence is admissible under MRE 404(b)(1) if it is (1) offered for a proper purpose, i.e., one other than to prove the defendant's character or propensity to commit the crime, (2) relevant to an issue or fact of consequence at trial, MRE 401, and (3) sufficiently probative to outweigh the danger of unfair prejudice, pursuant to MRE 403. *People v Starr*, 457 Mich 490, 496-497; 577 NW2d 673 (1998); *People v VanderVliet*, 444 Mich 52, 55, 63-64, 74-75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). Although MRE 404(b)(1) provides examples of permissible uses of other-acts evidence, the list is not exhaustive. *People v Watson*, 245 Mich App 572, 576-577; 629 NW2d 411 (2001). The rule permits the admission of evidence of a defendant's prior acts for any relevant purpose that "does not risk impermissible inferences of character to conduct." *Id*. at 576 (citation omitted).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "A trial court admits relevant evidence to provide the trier of fact with as much useful information as possible." *People v Cameron*, 291 Mich App 599, 612; 806 NW2d 371 (2011). The challenged evidence was relevant to show defendant's intent, plan, and motive to rob Pesserl, given that the other-acts witness identified defendant as having

approached her, less than a month before this incident, producing a gun, and then robbing and attempting to carjack her. This evidence was relevant to the prosecution's theory that defendant attempted to rob and carjack Pesserl, during which she was shot, and correspondingly weakened defendant's theory of the case that he was not involved. In addition, the challenged evidence supported Stringer's credibility, which the defense had challenged, to the extent that Stringer testified that defendant told him, "I know what I'm doing. I do this sh*t, I know what I'm doing." Accordingly, the evidence of defendant's prior conduct was relevant.

We likewise reject defendant's argument that the evidence should have been excluded under MRE 403 because it was unfairly prejudicial. Under MRE 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *Cameron*, 291 Mich App at 610 (citation omitted). Under the balancing test of MRE 403, a court must first decide if the prior other-acts evidence was unfairly prejudicial, and then " 'weigh the probativeness or relevance of the evidence' against the unfair prejudice" to determine whether any prejudicial effect substantially outweighed the probative value of the evidence. *Id*. at 611 (citation omitted). Unfair prejudice exists where there is "a danger that marginally probative evidence will be given undue or pre-emptive weight by the jury" or "it would be inequitable to allow the proponent of the evidence to use it." MRE 403 is not, however, intended to exclude "damaging" evidence, because any relevant evidence will be damaging to some extent. *People v Mills*, 450 Mich 61, 75-76; 537 NW2d 909, mod 450 Mich 1212 (1995); *People v McGuffey*, 251 Mich App 155, 163; 649 NW2d 801 (2002). In the second situation, the unfair prejudice language "refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *Cameron*, 291 Mich App 611 (citation omitted).

In this case, the trial court weighed the probative value of the other-acts evidence against its potential to cause unfair prejudice to determine whether the jury would have been able to rationally weigh the evidence and consider it for its proper purpose. Defendant's defense—that the evidence was insufficient to connect him to the crime and that Stringer's testimony was not credible—enhanced the probative value of the evidence. Moreover, the trial court gave a cautionary instruction to the jury explaining the limited, permissible use of the evidence, thereby limiting any potential for unfair prejudice. It is well established that jurors are presumed to have followed their instructions. *People v Breidenbach*, 489 Mich 1, 13; 798 NW2d 738 (2011). The trial court did not abuse its discretion by determining that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

## II. MANDATORY LIFE SENTENCE

Defendant next argues that, given his age of 18 years at the time of the offense, the imposition of the statutory sentence of mandatory life imprisonment without the possibility of parole violates the Eighth Amendment because mitigating factors of youth were not considered. Because defendant did not challenge the constitutionality of his mandatory life-without-parole sentence in the trial court, this issue is unpreserved. Accordingly, we review this issue for plain error affecting defendant's substantial rights. See *People v Carines*, 460 Mich 750, 752-753, 763-764; 597 NW2d 130 (1999).

"The Michigan Constitution prohibits cruel *or* unusual punishment, Const 1963, art 1, § 16,[1] whereas the United States Constitution prohibits cruel *and* unusual punishment, US Const, Am VIII.[2]" *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011). "If a punishment passes muster under the state constitution, then it necessarily passes muster under the federal constitution." *Id*. (quotation marks and citation omitted). Whether a penalty or sentence imposed against a defendant can be considered cruel or unusual is to be determined by a three-pronged test including: "(1) the severity of the sentence imposed and the gravity of the offense, (2) a comparison of the penalty to penalties for other crimes under Michigan law, and (3) a comparison between Michigan's penalty and penalties imposed for the same offense in other states." *Id*. (citation omitted).

The Legislature has mandated a sentence of life imprisonment without the possibility of parole for adult offenders who commit the crime of first-degree murder. MCL 750.316. In *People v Hall*, 396 Mich 650, 657-658; 242 NW2d 377 (1976), our Supreme Court upheld the life sentence mandated by MCL 750.316 for felony murder, under both the United States and Michigan Constitutions. The Court expressly rejected the defendant's assertions that a mandatory life sentence under MCL 750.316 violates both US Const, Am VIII, prohibiting "cruel and unusual" punishment, and Const 1963, art 1, § 16, forbidding "cruel or unusual" punishment. The Court found that "the punishment exacted is proportionate to the crime," that no indication existed that "Michigan's punishment is widely divergent from any sister jurisdiction," and that the sentence served the Legislature's permissible goal to deter similar conduct by others. *Hall*, 396 Mich at 658. "Legislatively mandated sentences are presumptively proportional and presumptively valid." *People v Brown*, 294 Mich App 377, 390; 811 NW2d 531 (2011). "[A] proportionate sentence does not constitute cruel or unusual punishment." *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008).

As defendant observes, in *Miller v Alabama*, 567 US 460, 465; 132 S Ct 2455; 183 L Ed 2d 407 (2012), the United States Supreme Court held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.' " The Court concluded that this mandatory sentencing "prevents those meting out punishment from considering a juvenile's 'lessened culpability' and greater 'capacity for change,' *Graham v Florida*, 560 US 48, 68, 74; 130 S Ct 2011; 176 L Ed 2d 825 (2010), and runs afoul of our cases' requirement of individualized sentencing for defendants facing the most serious penalties." *Miller*, 567 US at 465. However, *Miller* is not applicable to this case.

It is undisputed that defendant was 18 years old at the time this offense was committed on December 9, 2016. Because defendant does not fall within the protected class described in *Miller*, that decision is not applicable to him or this case. Further, Michigan codified *Miller*'s individualized sentencing requirement in MCL 769.25, but again, that statute applies only to those

---

[1] The Michigan Constitution provides that "cruel or unusual punishment shall not be inflicted[.]" Const 1963, art 1, § 16.

[2] The Eighth Amendment of the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." US Const, Am VIII.

defendants who had not yet reached the age of 18 when they committed their crimes. Defendant cites *Miller* and scientific studies, to argue that it is unjustifiable to apply mandatory-minimum sentences to 18-year-old offenders, like him, whose brains are continuing to mature. Defendant is attempting to expand *Miller* beyond its holding. Notably, the Supreme Court's decisions in *Graham* and *Miller* are rooted in that Court's prior decision in *Roper v Simmons*, 543 US 551, 574; 125 S Ct 1183; 161 L Ed 2d 1 (2005), in which the Court stated:

> Drawing the line at 18 years of age is subject, of course, to the objections always raised against categorical rules. The qualities that distinguish juveniles from adults do not disappear when an individual turns 18. By the same token, some under 18 have already attained a level of maturity some adults will never reach. For the reasons we have discussed, however, a line must be drawn. The plurality opinion in *Thompson* [*v Oklahoma*, 487 US 815; 108 S Ct 2687; 101 L Ed 2d 702 (1988),] drew the line at 16. In the intervening years the *Thompson* plurality's conclusion that offenders under 16 may not be executed has not been challenged. The logic of *Thompson* extends to those who are under 18. The age of 18 is the point where society draws the line for many purposes between childhood and adulthood. It is, we conclude, the age at which the line for death eligibility ought to rest.

The *Roper* decision reflects that categorical distinctions, although imperfect, are necessary in the administration of justice and that the age of 18 is widely accepted as the point at which adult privileges and responsibilities begin in a broad spectrum of activities. Accordingly, we reject defendant's argument that the Eighth Amendment bars Michigan from imposing a mandatory sentence of life imprisonment without parole on 18-year-old offenders who commit first-degree murder.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he is entitled to a new trial because defense counsel was ineffective for failing to object to a police detective's opinion testimony that the sole impressions of defendant's shoes matched the impressions found at the crime scene and other locations. We disagree. Because defendant failed to raise this ineffective-assistance claim in a motion for a new trial or request for an evidentiary hearing in the trial court, our review of this issue is limited to mistakes apparent from the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013) (citation omitted). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id*.

The effective assistance of counsel is presumed, and the burden is on the defendant to establish the contrary. *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002); *People v Roscoe*, 303 Mich App 633, 644; 846 NW2d 402 (2014). "Reviewing courts are not only required to give counsel the benefit of the doubt with this presumption, they are required to 'affirmatively entertain the range of possible' reasons that counsel may have had for proceeding as he or she did."

*People v Gioglio (On Remand)*, 296 Mich App 12, 22; 815 NW2d 589 (2012), vacated in part on other grounds 493 Mich 864 (2012) (citation omitted). "[A] reviewing court must conclude that the act or omission of the defendant's trial counsel fell within the range of reasonable professional conduct if, after affirmatively entertaining the range of possible reasons for the act or omission under the facts known to the reviewing court, there might have been a legitimate strategic reason for the act or omission." *Id*. at 22-23.

## A. BACKGROUND

At trial, testimony was presented about shoeprint impressions that were left in the snow near the location of the car fire, leading away from the vehicle toward Wimberly Court, at the Pesserl residence, and at a boat-launch site where an officer had seen defendant and Stringer on the night of the offense. During the prosecutor's direct examination of a detective who observed the shoe impressions and collected a pair of Prada shoes from the Stringer house, the following exchange occurred:

*Q*. Did you have an opportunity when [Stringer] gave you those Prada shoes to take a look at the tread area?

*A*. Yes.

*Q*. And were they significant to you in any way?

*A*. Very significant.

*Q*. And why was that?

*A*. It was [sic] the sole impressions *matched exactly* to every impression at the scene of the fire, at the end of Wimberly, at the boat launch and at the victim's residence. [Emphasis added.]

Subsequently, an expert in trace evidence as it relates to footwear impressions and comparisons, testified that there were similarities in the tread patterns from the various shoe impressions observed by the police and the Prada shoes, but he could not determine that they were a match. On the basis of the expert's testimony, defendant argues that the detective's testimony was "false," and trial counsel's failure to object denied him a fair trial.

## B. ANALYSIS

Preliminarily, MRE 701 permits lay witnesses to provide testimony in the form of an opinion if the opinion is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." But " 'a witness cannot express an opinion on the defendant's guilt or innocence of the charged offense.' " *People v Fomby*, 300 Mich App 46, 53; 831 NW2d 887 (2013) (citation omitted). Courts have liberally applied MRE 701 in order to help develop a clearer understanding of facts for the trier of fact. *People v Oliver*, 170 Mich App 38, 50; 427 NW2d 898 (1988), mod on other grounds 433 Mich 862 (1989). Thus, a lay witness may offer an opinion on matters that are related to his

observations and findings and are not "overly dependent upon scientific, technical, or other specialized knowledge." *Id.* (citation omitted).

In this case, the prosecutor asked the detective about his thoughts "*when* [Stringer] gave [him] those Prada shoes . . . ." On the basis of his observations at that time, the detective found the shoes "very significant" to him, because the soles matched the shoeprint impressions found at the scene and other locations. The detective's opinion was clearly based on his own observations, and the detective did not claim that his opinion was based on any specialized, technical, or scientific knowledge. Opinions of police officers who have not been qualified as experts are admissible under MRE 701 if they arise from the officers' observations, they are generally based on common sense, and they are not overly dependent upon scientific expertise. *Richardson v Ryder Truck Rental, Inc*, 213 Mich App 447, 455-456; 540 NW2d 696 (1995); *Oliver*, 170 Mich App at 50. Because the challenged testimony was not clearly improper, trial counsel's failure to object was not objectively unreasonable.

Further, to the extent that trial counsel could have offered an objection, or perhaps sought clarification of the parameters of the detective's opinion, there is no reasonable probability that counsel's failure to object affected the outcome of defendant's trial, particularly considering the expert testimony that was later presented and defense counsel's remarks in closing argument and apparent trial strategy.[3] Counsel's strategy was to focus on the fact that it was Stringer, and not defendant, who turned over the Prada shoes to the detective. During cross-examination, trial counsel questioned the detective about the "foot impressions," and then asked, "It is your testimony that these particular Prada shoes were handed to you by Jaylen Stringer." He then elicited the detective's agreement that "no one else presented shoes to you or even pointed to you and said hey, look you might want to look over here at these shoes." As noted, the prosecutor's expert testified *after* the detective, and trial counsel emphasized in closing argument that the expert could not determine for certain that the Prada shoes made the shoe impressions found at the scene and other locations. Further, counsel again emphasized that Stringer was the person who gave the shoes to the detective. He also argued that Stringer was the person who lived in the neighborhood and knew how to move around it, and he asserted that, based on other evidence, it was Stringer, and not defendant, whom a defense witness had seen driving away in a car after a woman was running. Trial counsel specifically argued that the "prosecutor has not proven her case beyond a reasonable doubt as to whether or not it was [defendant] that was wearing those Prada's." Considering the expert's later testimony that the Prada shoes could not conclusively be matched to the shoe impressions found at the crime scene and other locations, as well as defense counsel's strategy related to the shoes, there is no reasonable probability that the detective's opinion testimony about the shoe impressions affected the outcome of defendant's trial. Consequently, defendant cannot establish a claim of ineffective assistance of counsel.

---

[3] "[T]his Court will not second-guess defense counsel's judgment on matters of trial strategy." *Benton*, 294 Mich App at 203.

## IV. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises additional issues in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, none of which have merit.

### A. DOUBLE JEOPARDY

Defendant argues that the use of the other-acts evidence discussed in Section I, *supra*, at his trial in this case violated his double-jeopardy protection against multiple punishments for the same offense. This claim is misplaced. The United States and Michigan Constitutions both protect against double jeopardy, which includes protection against multiple punishments for the same offense. US Const, Am V; Const 1963, art 1, § 15. This case involves an offense in Oakland County on December 9, 2016, which resulted in the death of Pesserl. The other incident involved allegations that defendant robbed and attempted to carjack another person, Holloway, in Wayne County on November 14, 2016. Because the two incidents do not involve the "same offense," but rather involve different victims, in different counties, more than one month apart, they do not implicate double-jeopardy protections.

### B. INEFFECTIVE ASSISTANCE OF COUNSEL

We have already addressed and rejected defendant's ineffective-assistance claim in Section III, *supra*.

### C. JURY INSTRUCTIONS

In his last claim, defendant argues that he was denied his constitutional right to a properly instructed jury because the verdict form did not provide the jury with the option of returning a general "not guilty" verdict for the open-murder count. Defendant did not object to the trial court's jury instructions or the verdict form. Therefore, this issue is unpreserved and defendant must demonstrate a plain error affecting his substantial rights. See *Carines*, 460 Mich at 763-764. The record does not support this claim of error.

Due process requires that the trial court "properly instruct the jury so that it may correctly and intelligently decide the case." *People v Clark*, 453 Mich 572, 584-585; 556 NW2d 820 (1996) (citations omitted). Defendant correctly observes that "a criminal defendant is deprived of his constitutional right to a jury trial when the jury is not given the opportunity to return a general verdict of not guilty." *People v Wade*, 283 Mich App 462, 467; 771 NW2d 447 (2009). In *Wade*, the jury verdict form did not allow the jury to select a general "not guilty" verdict, the trial court's instructions and the jury foreperson's reading of the jury verdict form indicated that the jury was confused about its options in completing the jury verdict from, and the jury convicted the defendant of a lesser included offense. *Id*. at 465-468.

In this case, the verdict form provided the jury with the following options for the open-murder count:

_____ Not Guilty

_____ Guilty of First-Degree Premeditated Murder

_____ Guilty of First-Degree Felony Murder

_____ Guilty of First-Degree Premeditated Murder and Guilty of First-Degree Felony
      Murder

_____ Guilty of the less serious crime of Second-Degree Murder

The trial court also instructed the jury on the choices provided on the verdict form, stating:

You can only return only one verdict on each count. The first count is count one,
homicide open murder, not guilty, guilty of first degree premeditated murder, guilty
of first degree felony murder, guilty of first degree premeditated murder and guilty
of first degree felony, guilty of the less serious crime of second degree.

Contrary to what defendant asserts, the verdict form specifically gave the jury the option
to select a general "Not Guilty" verdict for the open-murder charge. Similarly, the trial court
instructed the jury that one of the available options for the open-murder charge was a verdict of
"not guilty" and to "return only one verdict on each count." The jury convicted defendant of first-
degree felony murder. Because the record clearly establishes that the jury was given the
opportunity to return a general verdict of not guilty, defendant's unpreserved challenge to the jury
verdict form is without merit and does not warrant relief.

Affirmed.


                    /s/ Michael F. Gadola
                    /s/ Mark J. Cavanagh
                    /s/ Michael J. Kelly