PEOPLE *v.* HALL

1. HOMICIDE — MURDER — EVIDENCE — WITNESSES — CONFRONTA-
   TION — CAUSE OF DEATH — HARMLESS ERROR.

   Admission into evidence of a medical examiner's report in a
   trial of first-degree murder was harmless error, if error at
   all, even though the signer of the report died before the de-
   fendant could cross examine him, where there was no real dis-
   pute as to the cause of the victim's death.

2. CRIMINAL LAW—FORMER JEOPARDY—CONSTITUTIONAL LAW—DIS-
   AGREEMENT OF JURY—DISCHARGE OF JURY—NEW TRIAL.

   Double jeopardy does not result where a jury is discharged
   because it cannot agree on a verdict and a new trial is had
   (US Const, Am 5).

3. CRIMINAL LAW—LINEUPS—CONSTITUTIONAL LAW—WARRANTS—
   RIGHT TO COUNSEL.

   Identification lineups were not a violation of the defendant's
   constitutional rights and were not so unfair as to deprive
   him of a fair trial on a charge of first-degree murder where
   he was in jail on another charge and was required to partici-
   pate in the lineups in January 1967, without a warrant
   having been issued on the charge in connection with which
   the lineups were held which were conducted without his being
   represented by counsel.

Appeal from Recorder's Court of Detroit, Charles
Kaufman, J., presiding. Submitted Division 1 April
13, 1970, at Detroit. (Docket No. 6,912.) Decided

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence § 871.
   40 Am Jur 2d, Homicide §§ 398, 399.
[2] 21 Am Jur 2d, Criminal Law § 194.
[3] 21 Am Jur 2d, Criminal Law § 368.

June 23, 1970.   Rehearing denied August 3, 1970.
Application for leave to appeal filed.   Leave to
appeal denied December 1, 1970.   384 Mich 785.

John Sam Hall was convicted of first-degree mur-
der.   Defendant appeals.   Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Dominick R. Carnovale,*
Chief, Appellate Department, and *Thomas P. Smith,*
Assistant Prosecuting Attorney, for the people.

*Harold M. Ryan,* for defendant on appeal.

Before:   T. M. BURNS, P. J., and LEVIN and
DAVIDSON,* JJ.

T. M. BURNS, P. J.   On January 13, 1967, decedent
victim Albert Hoffman, being seventy-three years
old that day, was brutally beaten to death in an
alley near a bus stop in the Van Dyke-Gratiot area.

Two witnesses testified that they saw two men,
one of whom they identified as the defendant, attack
the old man and drag him into the alley where they
robbed him of his change purse.   The witnesses fur-
ther testified that the assailants then rolled the old
man over and went through his back pockets.   As
they went through his pockets, the assailant iden-
tified as the defendant was heard to say:   "If * * *
you move again we'll kill you," and "Get his watch
and ring."

The witnesses further testified that they were
then observed by the defendant's co-felon and fear-
ing for their lives, they ran off.

Mr. Hoffman's body was found a short time later
by a 14-year-old boy who, while on his way to a

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

friend's house, saw a hat and some eyeglasses lying on the sidewalk.

When the police arrived, Mr. Hoffman was dead. They found him lying on his back with extensive readily observable injuries, paramount among which was a crushed skull and jawbone. Although the cause of death was relatively obvious and is not disputed here, an autopsy was performed and a death certificate was signed by Dr. Zawadzki.

The police conducted several show-ups for the two eyewitnesses to the murder between the 16th and 20th of January, 1967. On January 19, 1967, witness, Oscar Kimbrough, identified defendant who was at the time being held on a breaking and entering charge, as one of Mr. Hoffman's assailants. The witness identified the defendant in part at least by his voice, after he, as well as all the others in the lineup, were required to say the words which the witnesses testified the assailants said.

The other eyewitness, Erwin Tarver, who was not present in the room when Mr. Kimbrough identified the defendant, identified him the next day under the same conditions as witness Kimbrough had identified him.

Defendant was arraigned on January 25, 1967 on the charge of murder in the first degree. MCLA § 750.316 (Stat Ann 1954 Rev § 28.548). Examination was set for the sixth of February, 1967, but was adjourned to and held on March 2, 1967.

The defendant was arraigned again on May 18, 1967 and, after the information was read, stood mute. A notice of alibi was filed on May 29, 1967, and on June 1, 1967 the trial was set for September 19, 1967.

A jury was sworn on September 19, 1967. At the conclusion of the trial, the jury was unable to agree on a verdict and was discharged. The defendant

was then remanded to custody and a new trial date of October 25, 1967 was set.

The trial was held and defendant was found guilty by a jury of murder in the first degree on November 1, 1967. He was sentenced to life imprisonment on the twenty-second of November, 1967.

On appeal, the defendant asserts that it was reversible error for the trial court to admit the medical examiner's report into evidence because the doctor who signed the report died before the defendant had a chance to cross examine. See *Pointer* v. *Texas* (1965), 380 US 400 (85 S Ct 1065, 13 L Ed 2d 923). Without going into the merits of defendant's assertion, we will not reverse the defendant's conviction upon this basis. We consider that even if the admission of the medical examiner's report were viewed as error because of the lack of confrontation, it would be harmless error as there is no real dispute as to the cause of death, (*i.e.,* the obviously crushed skull).

In his supplemental brief on appeal, defendant asserts that he was subjected to double jeopardy by the second trial. He also asserts that the lineup, which he was required to participate in while he was in jail on another charge and which was conducted without his being represented by counsel, was in contravention of his constitutional rights.

We do not agree.

Although defendant did not affirmatively assert double jeopardy as a bar to the second trial at its inception, such neglect would not necessarily waive the right if it were violated. See *People* v. *Bower* (1966), 3 Mich App 585; see also *People* v. *McPherson* (1970), 21 Mich App 385. Here, however, with regard to the asserted violation of US Const, Am 5 provisions against double jeopardy, we note that despite the defendant's allegation that no satisfac-

tory reason is given for dismissal of the jury in the first trial without their giving a verdict, the jury in defendant's first trial was unable to reach agreement. The discharging of a jury and the holding of a new trial does not result in double jeopardy where the jury cannot agree on a verdict. *People* v. *Duncan* (1964), 373 Mich 650; *In re Weir* (1955), 342 Mich 96.

With regard to the defendant's contentions as concerns the lineups, we must first say that since the lineups in question here were held on January 19th and 20th, 1967, defendant's reliance on *United States* v. *Wade* (June 12, 1967), 388 US 218, (87 S Ct 1926, 18 L Ed 2d 1149) and *Gilbert* v. *California* (June 12, 1967), 388 US 263, (87 S Ct 1951, 18 L Ed 2d 1178) is misplaced. As these cases require that a defendant be granted the right to counsel at a lineup they were given prospective application only by *Stovall* v. *Denno* (1967), 388 US 293, (87 S Ct 1967, 18 L Ed 2d 1199). See also *People* v. *Hutton* (1970), 21 Mich App 312.

Under *Stovall* v. *Denno, supra,* defendant can direct inquiry only into the "totality of the circumstances to determine whether it was so unfair as to deprive him of a fair trial." *United States, ex rel. Bennett,* v. *Myers* (CA3, 1967), 381 F2d 814.

Thus directed, we turn then to the defendant's claim that to have required him to participate in a lineup without a warrant having been issued on the charge where he was already in jail on another charge was a violation of his constitutional rights.

This same claim has been presented to at least two other courts both of which have rejected it. *People* v. *Nelson* (1968), 40 Ill 2d 146, 238 NE2d 378; *Rigney* v. *Hendrick* (CA3, 1965), 355 F2d 710; *United States* v. *Evans* (CA3, 1966), 359 F2d 776.

In *Rigney* v. *Hendrick, supra,* at pp 711, 712, 713, the court said:

"* * * They contend that their incarceration is solely for the purpose of binding them over for trial on the charges for which they have been indicted. They maintain that compelling them to leave their cells and to participate in a lineup, involving crimes other than those for which they have been indicted, cannot be done absent a valid arrest for those additional crimes. They further assert that their compulsory removal and participation would constitute an arrest without probable cause. * * * These contentions stand or fall on whether an arrest must be made in every case before a suspect, not yet accused of the crime, can be placed in a lineup for the purpose of identification.

"The right of the police to investigate unsolved crimes cannot be denied. * * * The scope of investigative measures used by the police necessarily includes identification of the suspected perpetrator by the victim or witnesses. In most cases this is the most positive method of solution. Indeed, * * * the use of a lineup is not illegal *per se* and can be a proper police practice. * * * It is clear that a suspect need not be under arrest to be observed. There is no law or decision which says that a man, free or incarcerated, has a constitutional right not to be observed and possibly identified as the perpetrator of a crime even though no formal charges have been made.

*          *          *

"The contention made by the appellants that there first must be an arrest before they are taken from their cells to be placed in a lineup has no merit, for the sole physical attribute of an arrest is the taking into custody. Here, it would be anomalous to require an arrest, for the appellants are already in custody. * * * It is clear that the constitution does not always require that the interests of the police in quickly and efficiently solving crimes yield

to every assertion of a violation of due process."
(Citations omitted.)

Relying on the reasoning found in *United States*
v. *Evans supra, cert den* (1966), 385 US 863, (87
S Ct 120, 17 L Ed 2d 90) and *Rigney* v. *Hendrick,
supra, cert den* (1966), 384 US 975, (86 S Ct 1868,
16 L Ed 2d 685), we reject the defendant's assertions
of error here.   We do not consider that the lineups
which resulted in defendant being identified as one
of Mr. Hoffman's murderers was, in view of the
totality of the circumstances, so unfair as to deprive
him of a fair trial.

Finding no reversible error, we affirm.

Affirmed.

All concurred.