## PEOPLE v HALL

Docket No. 55337. Argued June 3, 1975 (Calendar No. 2).—Decided
    June 3, 1976.

John S. Hall was convicted of first-degree murder by a jury in
    Recorder's Court of Detroit, Charles Kaufman, J., after a first
    trial on the same charge resulted in a hung jury. The Court of
    Appeals, T. M. Burns, P. J., and Levin and Davidson, JJ., af-
    firmed (Docket No. 6912), and the Supreme Court denied leave
    to appeal, 384 Mich 785 (1970). Defendant subsequently filed a
    delayed motion for new trial which was denied. The Court of
    Appeals denied leave for a delayed appeal. Defendant appeals.
    *Held:*

1. Forced participation by the defendant in identification
lineups with the requirement that he repeat certain statements
for purposes of voice identification by witnesses while he was
lawfully in jail on an unrelated charge does not constitute an
unreasonable search and seizure.

2. Identification testimony which was thoroughly explored at
trial before the jury was sufficient, if believed by the jury, to
establish the defendant as one of the perpetrators of the crime.

3. The double jeopardy guarantee does not bar retrial of the
defendant where the first trial court, after making inquiry
whether there was any probability that the jury could agree on
a verdict, reasonably concluded that the jury was unable to
agree.

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 368.
    29 Am Jur 2d, Evidence § 371 *et seq.*
    Admissibility of lineup identification as affected by allegedly sugges-
    tive lineup procedures. 39 ALR3d 487.
[2] 4 Am Jur 2d, Appeal and Error § 77.
    5 Am Jur 2d, Appeal and Error § 833 *et seq.*
[3] 76 Am Jur 2d, Trial § 1112.
[4] 30 Am Jur 2d, Evidence § 1022.
    75 Am Jur 2d, Trial §§ 166, 167, 577, 708.
[5, 6] 21 Am Jur 2d, Criminal Law §§ 14, 610–612.
    40 Am Jur 2d, Homicide §§ 2, 556.
[7] 76 Am Jur 2d, Trial § 1104.

4. Where appropriate cautionary instructions if requested could have cured any prejudice resulting from the prosecutor's closing argument, and no request was made, there was no reversible error.

5. The mandatory life sentence provided by statute for first-degree murder does not violate the constitutional guarantees of due process and equal protection, and against cruel or unusual punishment, nor the separation of powers clause.

Affirmed.

Chief Justice Kavanagh, joined by Justice Williams, would reverse the conviction on the grounds that the closing argument of the prosecutor was inflammatory and improper. The defendant was deprived of a fair trial by this tactic and the unfairness cannot be repaired by curative instructions or discipline of the offending lawyer.

24 Mich App 509; 180 NW2d 363 (1970) affirmed.

OPINION OF THE COURT

1. SEARCHES AND SEIZURES—LINEUP—SPEAKING REQUIREMENT—FORCED PARTICIPATION.

Forced participation in a lineup by a person lawfully incarcerated, with a requirement that all subjects in the lineup repeat statements made by assailants of a victim in a robbery, does not constitute an unreasonable search and seizure (US Const, Am IV; Const 1963, art 1, § 11).

2. CRIMINAL LAW—EVIDENCE—APPEAL AND ERROR.

The decision of a jury should not be disturbed by an appellate court where sufficient evidence exists, which may be believed by the jury, to sustain a verdict of guilty beyond a reasonable doubt.

3. CONSTITUTIONAL LAW—CRIMINAL LAW—DOUBLE JEOPARDY—MISTRIAL—HUNG JURY.

The guarantee against double jeopardy does not bar retrial of a defendant where the first trial court has reasonably concluded that the jury is unable to agree on a verdict.

4. CRIMINAL LAW—ARGUMENT OF COUNSEL—CURATIVE INSTRUCTIONS.

Reversible error does not result from failure to give cautionary instructions to the jury in response to a prosecutor's closing argument where appropriate instructions would have cured any prejudice and instructions were not requested.

5. HOMICIDE—FIRST-DEGREE MURDER—MANDATORY SENTENCE—CON-
STITUTIONAL LAW.

The statute which provides a mandatory life sentence for first-
degree murder does not violate constitutional guarantees of due
process and equal protection, or the guarantee against cruel or
unusual punishment (US Const, Ams VIII, XIV; Const 1963, art
1, §§ 1, 16, 17; MCL 750.316; MSA 28.548).

6. CRIMINAL LAW—SENTENCES—SEPARATION OF POWERS.

The power to establish sentences has historically resided in the
Legislature; the separation of powers clause is not offended by
the Legislature delegating sentencing discretion in part to the
courts and retaining sentencing discretion in part by establish-
ing a mandatory life sentence for first-degree murder (Const
1963, art 3, § 2; MCL 750.316; MSA 28.548).

DISSENTING OPINION

KAVANAGH, C. J., and WILLIAMS, J.

7. CRIMINAL LAW—ARGUMENT OF COUNSEL—FAIR TRIAL.

*An inflammatory and improper closing argument by a prosecutor
deprives a defendant of a fair trial, and the unfairness cannot
be repaired by curative instructions or discipline of the offend-
ing lawyer.*

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, and *Patricia J. Boyle,* Prin-
cipal Attorney, Research, Training & Appeals, for
the people.

*State Appellate Defender Office* (by *Dennis H.
Benson)* for defendant.

LINDEMER, J. Defendant was charged with the
robbery and beating death of Albert Hoffman on
January 13, 1967. Two witnesses, Kimbrough and
Tarver, saw two men attack Hoffman and rob him.
They heard one assailant say, "If you move again,
we'll kill you," and "Get his watch and ring".

While the defendant was being held in the
Wayne County Jail on an unrelated charge, he

participated in separate lineups for each of the two witnesses. At these lineups all subjects were told to repeat the assailant's statements. The defendant was identified by both Kimbrough and Tarver at the lineups and at trial. Defendant was subsequently charged with felony murder, MCLA 750.316; MSA 28.548. After a first trial ended in a hung jury, defendant was jury-convicted of felony murder in a second trial. That conviction was affirmed by the Court of Appeals, 24 Mich App 509; 180 NW2d 363 (1970), and this Court denied leave to appeal, 384 Mich 785 (1970).

Defendant subsequently filed with the trial court a delayed motion for new trial, which was denied. From this denial, defendant filed a petition for mandamus in the Court of Appeals, which was apparently treated as an application for delayed appeal and denied. Defendant's application for leave to appeal was granted by this Court, 391 Mich 786 (1974). The prosecutor's motion to strike six of the seven issues in this case was denied by order, 394 Mich 907 (1975), so this opinion will consider all seven issues.

Defendant first claims that his right to be free from unreasonable searches and seizures under US Const, Am IV, and Const 1963, art 1, § 11, was violated by forced participation in a lineup while in police custody. It does not appear from the record that defendant was forced to participate in the lineup, but neither is consent evident. We treat defendant's participation as forced. We agree with appellant that confinement in the Wayne County Jail did not strip him of all constitutional rights, *People v Trudeau,* 385 Mich 276; 187 NW2d 890 (1971). However, the Court of Appeals did not err in concluding that, once initially restrained by lawful incarceration without infringement of any

search and seizure rights, the forced participation in a lineup, complete with speaking requirement, does not constitute an unreasonable search and seizure. *United States v Dionisio,* 410 US 1; 93 S Ct 764; 35 L Ed 2d 67 (1973).

Defendant next argues that his conviction may not be sustained since it is based solely on untrustworthy, unreliable and legally insufficient evidence. That the corpus delicti of the crime was established is not challenged. The identification of defendant by witnesses Kimbrough and Tarver was thoroughly explored at trial before the jury. Such identification testimony, if believed by the jury, established defendant as one of the perpetrators of the crime.

"Juries, not appellate courts, see and hear witnesses and are in a much better position to decide the weight and credibility to be given to their testimony. Where sufficient evidence exists, which may be believed by the jury, to sustain a verdict of guilty beyond a reasonable doubt, the decision of the jury should not be disturbed by an appellate court. *People v Moore,* 306 Mich 29, 33; 10 NW2d 296 (1943)." *People v Palmer,* 392 Mich 370, 376; 220 NW2d 393 (1974).

This claim of error is without merit.

Defendant challenges that his second trial after the first trial ended with a hung jury violated his right not to be twice placed in jeopardy under Const 1963, art 1, § 15, citing *People v Duncan,* 373 Mich 650; 130 NW2d 385 (1964). In *Duncan,* as in this case, there was a lengthy period of jury deliberations. In both cases testimony and supplementary charges were given. In contrast to *Duncan,* the trial court here followed the better practice (as suggested by *Duncan)* by making further inquiry to determine whether there was any prob-

ability that the jury ultimately could agree on a verdict. When the court ascertained there was not, the mistrial was declared. The holding of *Duncan* applies in this case. The double-jeopardy guarantee does not bar retrial where, as here, the trial court has reasonably concluded that the jury is unable to agree on a verdict.

Defendant complains of the unconstitutionality of Michigan's former notice-of-alibi statute, MCLA 768.20; MSA 28.1043, in connection with an attempt by the prosecutor to introduce a prior inconsistent statement for alibi rebuttal. Since there was no notice of this statement to defendant, its admission, defendant claims, would have violated the statute. We do not reach the question. The statement was never admitted, and there was no impermissible intimation as in *People v Jones,* 293 Mich 409; 292 NW 350 (1940). Defendant was able to present his complete alibi defense. This claimed error is without substance.

Defendant charges that misconduct by the prosecutor deprived him of a fair trial. We agree with the prosecutor that defendant, by appellate counsel, imposes on this Court by claiming that the prosecutor knowingly permitted the introduction of false testimony. Witnesses Kimbrough and Tarver never precisely identified when the crime took place. Inconsistencies in time statements of Kimbrough and Tarver and throughout defendant's alibi testimony were thoroughly weighed and resolved by the jury against defendant.

No objections or requests for curative instructions were made in response to the prosecutor's closing argument, so we will reverse only if such instructions could not have cured any prejudice. *People v Humphreys,* 24 Mich App 411, 416; 180 NW2d 328 (1970). Commentary on the evidence

adduced at trial did not amount to statements of fact by the prosecuting attorney, so there is no error under *People v Ignofo,* 315 Mich 626; 24 NW2d 514 (1946).

In the course of closing argument, the prosecutor said:

"If any person committing a crime or being suspected of committing a crime could say to a police officer, 'I am not coming out of my cell for anybody to look at me,' then let's throw away our law books and let's eliminate our courts and try these cases on the streets with a shotgun and a pistol and go back to the Dark Ages.

\* \* \*

"But, by the same token, members of the jury, the People of the State of Michigan have some rights. We have a right to be safe and secure in our homes and on our streets. We have a right to protect ourselves against predatory animals. We have a right to ask citizens of our community for honest and decent verdicts, and we ask for those rights in the name of the People of the State of Michigan.

"Albert Hoffman had some rights, ladies and gentlemen. He had a right to live until God took him away and his wife had a right to his company until that time. But he was snatched away by someone who did not accord him the rights this defendant demands. This defendant was judge, jury and executioner that night at Van Dyke and Gratiot on his seventy-third birthday."

Whether or not in total context this language is improper, we cannot agree with defendant that appropriate cautionary instructions given on request would not have cured any error. Indeed, the trial court gave the following agreed-upon and appropriate instruction:

"[A]rguments of counsel are not evidence in the case and should not be construed by you [the jury] as such. The purpose of arguments of counsel is to assist you in

coordinating, summarizing and drawing conclusions from what testimony and evidence you have heard."

The remaining statements are justifiable in response to the closing of defense counsel. *People v Allen,* 351 Mich 535, 544; 88 NW2d 433 (1958). We can find no reversible error.

As to defendant's claim of error regarding the trial court's instruction on felony murder without an explanation of malice, trial counsel stated in response to the prosecutor's suggestion that the trial court should define murder:

"We have no degrees of murder. It is either guilty or not guilty",

and affirmatively stated he had no objection to the charge as given. This error is not preserved for appellate review. *People v Alcala,* 396 Mich 99; 237 NW2d 475 (1976).

Finally, defendant attacks the mandatory life sentence under MCLA 750.316; MSA 28.548 as violative of constitutional due process and equal protection guarantees (US Const, Am XIV; Const 1963, art 1, §§ 1, 17); the constitutional guarantees against cruel or unusual punishment (US Const, Am VIII: "cruel and unusual"; Const 1963, art 1, § 16: "cruel or unusual"); and the constitutional doctrine of separation of powers. None of these constitutional challenges have merit.

The mandatory life sentence (without possibility of parole, MCLA 769.9; MSA 28.1081) was expressly excluded from discussion in *People v Tanner,* 387 Mich 683, 690; 199 NW2d 202 (1972). Defendant cites no authority for his proposition that a mandatory life sentence violates defendant's due process and equal protection rights. As for the cruel and unusual punishment claim, under *Peo-*

*ple v Lorentzen,* 387 Mich 167; 194 NW2d 827 (1972), the punishment exacted is proportionate to the crime. Defendant has not contended that Michigan's punishment for felony murder is widely divergent from any sister jurisdiction. The third *Lorentzen* factor, rehabilitation, was not the only allowable consideration for the Legislature to consider in setting punishment.

"[S]ociety's need to deter similar proscribed behavior in others, and the need to prevent the individual offender from causing further injury to society"

were also recognized. 387 Mich at 180; 194 NW2d at 833. In any event rehabilitation and release are still possible, since defendant still has available to him commutation of sentence by the Governor to a parolable offense or outright pardon. Const 1963, art 5, § 14; *People v Freleigh,* 334 Mich 306; 54 NW2d 599 (1952). A mandatory life sentence without possibility of parole for this crime does not shock the conscience.

The power to establish sentences historically has resided in the Legislature. The separation of powers clause, Const 1963, art 3, § 2, is not offended by the Legislature delegating sentencing discretion in part and retaining sentencing discretion in part.

"The courts have no discretionary power in this respect unless it be conferred upon them by law." *People v Palm,* 245 Mich 396, 404; 223 NW 67 (1929).

The trial court and the Court of Appeals are affirmed.

COLEMAN and FITZGERALD, JJ., concurred with LINDEMER, J.

LEVIN and RYAN, JJ., took no part in the decision of this case.

KAVANAGH, C. J. *(dissenting).* The closing argument of the prosecutor was highly inflammatory and improper.

We have spoken to this many times, but some prosecutors persist in this practice. We apparently have devised no effective way to prevent it.

This tactic deprives a defendant of a fair trial and because this unfairness can never be repaired, the absence of objection or request for instructions means nothing.

Neither "curative" instructions nor discipline of the offending lawyer will substitute for a fair trial.

I would reverse the conviction.

WILLIAMS, J., concurred with KAVANAGH, C. J.