*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANDREW MICHAEL CZARNECKI,

        Defendant-Appellant.

FOR PUBLICATION
December 14, 2023

No. 348732
Wayne Circuit Court
LC No. 16-010813-01-FC

ON REMAND, ON RECONSIDERATION

Before: O'BRIEN, P.J., and BOONSTRA and GADOLA, JJ.

BOONSTRA J. (*concurring*).

I fully concur in the majority opinion. I write separately simply to offer some additional insights that I hope will help guide the judiciary going forward.

Michigan has long drawn the line between juveniles and adults at the age of 18. In 1971, the Michigan Legislature enacted the Age of Majority Act, MCL 722.52 *et seq*., which generally provided that "a person who is at least 18 years of age . . . is an adult of legal age for all purposes whatsoever, and shall have the same duties, liabilities, responsibilities, rights, and legal capacity as persons heretofore acquired at 21 years of age." MCL 722.52(1). The legal age to vote in Michigan is also 18. See Const 1963, art 2, § 1. The Michigan Constitution of 1963 (as well as the preceding state constitutions of 1835, 1850, and 1908) established the voting age as 21, see *id*., but it was effectively lowered to 18 by the ratification in 1971 of the 26th Amendment to the United States Constitution.[1] Under the common law, the capacity generally to enter into contracts is gained at the age of 18. See *Woodman ex rel Woodman v Kera LLC*, 486 Mich 228, 236;785

---

[1] US Const Amend XXVI, §1 provides: "The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age."

NW2d 1 (2010). The legal age to make a will is 18. MCL 700.2519. The legal age to marry is also 18. MCL 551.103(1).

Some specific conduct has become subject to different age requirements. In 1978, the people of Michigan adopted Proposal D, a constitutional amendment, raising the legal drinking age to 21 (from 18). Const. 1963, art 4, §40. The age of consent (for sexual activity) is 16. See, e.g., MCL 750.520c. A minor (under the age of 18) may petition a court to waive the requirement of parental consent for an abortion. MCL 722.903. Before the enactment of 2023 PA 71, effective September 19, 2023, the legal age to marry—with parental consent—was 16.[2] MCL 551.51; MCL 551.103.[3]

In abolishing the federal death penalty for juveniles, the United States Supreme Court explained that line-drawing is a necessity in the law:

> Drawing the line at 18 years of age is subject, of course, to the objections always raised against categorical rules. The qualities that distinguish juveniles from adults do not disappear when an individual turns 18. By the same token, some under 18 have already attained a level of maturity some adults will never reach. For the reasons we have discussed, however, a line must be drawn. . . . The age of 18 is the point where society draws the line for many purposes between childhood and adulthood. It is, we conclude, the age at which the line for death eligibility ought to rest. [*Roper v Simmons*, 543 US 551, 574; 125 S Ct 1183; 161 L Ed 2d 1 (2005).]

The United States Supreme Court drew the same line (at age 18) when it held that the Eighth Amendment to the United States Constitution forbids mandatory sentences of life imprisonment without the possibility of parole (LWOP) for juvenile offenders. *Miller v Alabama*, 567 US 460, 465, 479; 132 S Ct 2455; 183 L Ed 2d 407 (2012).

---

[2] Now that 2023 PA 71 and its related legislation has become effective, a minor (who, as noted, may petition for an abortion without parental consent, MCL 722.903) may no longer petition for permission to marry (even with parental consent). See House Bill 4294, tie-barred to 2023 PA 71 (containing amendments to MCL 551.103 eliminating a minor's ability to petition for marriage).

[3] It isn't a stretch to ponder, notwithstanding the recently-enacted *increase* in the legal age to marry (with parental consent), whether proposals to *reduce* the age for gender-transition measures will soon find their way into the law. The World Professional Association for Transgender Health recommends that the age for allowing gender-transition hormones be lowered to 14, and that for gender-transition surgeries be reduced to as low as 15. See International Journal of Transgender Health, "Standards of Care for the Health of Transgender and Gender Diverse People, Version 8" (2022), available at https://www.tandfonline.com/doi/pdf/10.1080/26895269.2022.2100644 (last accessed October 2, 2023); see also AP News, "Trans kids' treatment can start younger, new guidelines say," available at https://apnews.com/article/gender-transition-treatment-guidelines-9dbe54f670a3a0f5f2831c2bf14f9bbb (last accessed October 2, 2023).

In *People v Parks*, 510 Mich 225; 987 NW2d 161 (2022), a narrowly-divided Michigan Supreme Court saw fit to extend the holding of *Miller*, under the Michigan Constitution, beyond juveniles to include those adult defendants who had attained the age of 18. It relied on its evaluation of the "scientific and social-science research regarding the characteristics of the late-adolescent 18-year-old brain." *Id*., 510 Mich at 248. Of course, it is the very nature of "science" that it is rarely static or settled. See *People v Zimmerman*, 385 Mich 417, 460 n 8; 189 NW2d 259 (1971) (noting, in the context of the admission into evidence of expert opinion testimony, "Before approaching the evaluation of the state of the art in any scientific discipline, it is well to recognize that science, like the law, is not static but is dynamic, and as science from time to time revises its estimations of certainty or adds new fields[,] the law can and should recognize these developments."). This raises very serious questions of whether these judgments are properly those of the judiciary or the policy-making, legislative branch of government.[4] As Justice Scalia cautioned in *Roper*:

> Today's opinion provides a perfect example of why judges are ill equipped to make the type of legislative judgments the Court insists on making here. To support its opinion that States should be prohibited from imposing the death penalty on anyone who committed murder before age 18, the Court looks to scientific and sociological studies, picking and choosing those that support its position. It never explains why those particular studies are methodologically sound; none was ever entered into evidence or tested in an adversarial proceeding. As THE CHIEF JUSTICE has explained:
>
>> "[M]ethodological and other errors can affect the reliability and validity of estimates about the opinions and attitudes of a population derived from various sampling techniques. Everything from variations in the survey methodology, such as the choice of the target population, the sampling design used, the questions asked, and the statistical analyses used to interpret the data can skew the results." *Atkins, supra,* at 326–327, 122 S.Ct. 2242 (dissenting opinion) (citing R. Groves, Survey Errors and Survey Costs (1989); 1 C. Turner & E. Martin, Surveying Subjective Phenomena (1984)).
>
> In other words, all the Court has done today, to borrow from another context, is to look over the heads of the crowd and pick out its friends. Cf. *Conroy v. Aniskoff,* 507 U.S. 511, 519, 113 S.Ct. 1562, 123 L.Ed.2d 229 (1993) (SCALIA, J., concurring in judgment).
>
> We need not look far to find studies contradicting the Court's conclusions. [*Roper*, 543 US at 616-618 (SCALIA, J., dissenting).]

---

[4] See *Myers v City of Portage*, 304 Mich App 637, 644; 848 NW2d 200 (2014) ("[M]aking public policy is the province of the Legislature, not the courts.").

Our Supreme Court in *Parks* did "not dispute the dissent's point that any line-drawing will, at times, lead to arbitrary results." *Parks*, 510 Mich at 244-245. But it chose to draw the line—for then, at least—at the age of 19. In doing so, the Court observed that the defendants before it were both 18 years old at the time they committed their crimes and that it therefore did not need to decide whether its expansion of *Miller* should go farther than age 18:

> Given that Parks and Poole (the defendant in the companion case) were both 18 at the time they committed their crimes, our opinion only applies to 18-year-olds. We need not address the Michigan constitutional requirements for sentencing offenders who were over 18 years old at the time of the offense. [*Parks*, 510 Mich at 245.]

However, the Court expressly noted that "some of the mitigating characteristics in the scientific research submitted by amici and defense counsel apply to young adults, in some form, up to the age of 25." *Parks*, 510 Mich at 244. It also tellingly also stated:

> We recognize that this Court has previously held that a mandatory life-without-parole sentence for felony murder did not violate Const. 1963, art. 1, § 16. See *People v Hall*, 396 Mich. 650, 657-658, 242 N.W.2d 377 (1976). However, that decision did not address the issue of sentencing a *juvenile* to life without parole. Moreover, *Hall* was decided before the United States Supreme Court decided *Miller* and its progeny, and the *Hall* Court did not have the benefit of the scientific literature cited in this opinion. Accordingly, that decision does not preclude our holding in this case. Moreover, our holding today does not foreclose future review of life-without-parole sentences for other classes of defendants; however, our opinion today does not affect *Hall*'s holding as to those older than 18. See *Hall*, 396 Mich. at 657-658, 242 N.W.2d 377. [*Parks*, 510 Mich at 255 n 9.]

It thus appears that the Court in *Parks* may have been laying the groundwork to possibly extend its own extension of *Miller* (from age 18 to age 19) even farther, perhaps to age 25 (as it suggested some current scientific literature may support). How else does one explain the Court's (1) allowance of the addition of this legal issue, when it was not previously raised before this Court or in the initial application for leave to appeal in the Supreme Court;[5] (2) its pre-*Parks* holding of the application in abeyance pending a decision in *Parks*;[6] (3) its post-*Parks* remand to this Court— even though *Parks* expressly limited its holding to 18-year-olds—for consideration of "whether the defendant's mandatory sentence of life without parole for a murder committed at the age of 19 is cruel or unusual punishment under Const 1963, art 1, §16. See *Parks*, *supra*."[7]

---

[5] *People v Czarnecki*, ___ Mich ___; 967 NW2d 609 (2022). But see *People v McBurrows*, 504 Mich 308, 328 n 11; 934 NW2d 748 (2019) (declining to consider issues raised for the first time on appeal to the Michigan Supreme Court).

[6] *People v Czarnecki*, ___ Mich ___; 967 NW2d 609 (2022).

[7] *People v Czarnecki*, ___ Mich ___; 982 NW2d 172 (2022).

Notably, our Supreme Court similarly held in abeyance (pending *Parks*) an appeal in *People v Adamowicz*, unpublished opinion per curiam of the Court of Appeals, issued June 22, 2017 (Docket No. 330612),[8] which involved a defendant who was 21 years old at the time he committed first-degree premeditated murder. The Supreme Court then similarly remanded to this Court for reconsideration in light of *Parks*.[9] On remand, this Court noted the prediction of the dissent in *Parks* that "in the coming years we will hear cases arguing that we should extend *Miller*'s protection to those in their early twenties as well," see *Parks*, 510 Mich at 298 (CLEMENT, J., dissenting), and observed, "It didn't take that long." *People v Adamowicz (On Second Remand)*, ___ Mich App ___, ___; ___ NW2d ___ (2023), slip op at 2. This Court then held in *Adamowicz*, as we do in this case, that it was bound by the Supreme Court's decision in *Hall*, which had "upheld the constitutionality of a sentence of life imprisonment without the possibility of parole imposed upon an adult for the crime of first-degree premeditated murder," *Adamowicz (On Second Remand)*, __ Mich App at __, slip op at 3. The Court noted that *Hall* "has not been reversed or modified since its issuance," *id.*, and that the Supreme Court in *Parks* had expressly "conceded that it was not altering the holding in *Hall* to the extent it applied to defendants over the age of 18." *Id.*, slip op at 4, citing *Parks*, 510 Mich at 255 n 9. After concluding that it was bound by *Hall*, this Court in *Adamowicz* nonetheless then proceeded further to examine the *Lorentzen*[10] factors identified in *Parks* as relevant in evaluating the proportionality of sentences under the "cruel or unusual punishment" clause of our constitution, and concluded that, even if not bound by *Hall*, the defendant's sentence was constitutional. *Adamowicz (On Second Remand)*, __ Mich App at __., slip op at 9.[11] An application for leave to appeal in *Adamowicz* is now pending before our Supreme Court.

As the majority aptly notes, and notwithstanding that defendant was 19 years old when he committed his offenses while the defendant in *Adamowicz* was 21, we are bound by *Hall* and *Adamowicz*. It is up to our Supreme Court—should it choose to do so—to overturn *Hall* or, short of that, to possibly further erode *Hall*'s holding (as it did in *Parks* with respect to 18-year-olds). I would respectfully suggest, however, that "the law requires consistency," *WA Foote Mem Hosp v Michigan Assigned Claims Plan*, 321 Mich App 159, 193; 909 NW2d 38 (2017), vacated in part on other gds, 504 Mich 985; 934 NW2d 44 (2019), and that the objective of enabling litigants and legal practitioners the ability to rely upon well-established legal principles "is not furthered by a system of justice that allows the law to ebb and flow at the whim of the judiciary. It is instead furthered, and its legitimacy in the eyes of our society is advanced, by demanding consistency in

---

[8] *People v Adamowicz*, ___ Mich ___; 964 NW2d 36 (2021).

[9] *People v Adamowicz*, ___ Mich ___; 928 NW2d 176 (2022).

[10] *People v Lorentzen*, 387 Mich 167; 194 NW2d 827 (1972).

[11] This Court has applied *Adamowicz* in similarly upholding a LWOP sentence imposed on a defendant who was 21 years old at the time of his offenses, whose case the Supreme Court similarly remanded for reconsideration in light of *Parks*. See *People v Rush*, unpublished per curiam opinion of the Court of Appeals, issued June 22, 2023 (Docket No. 353182); *People v Rush*, ___ Mich ___; 982 NW2d 179 (2022). An application for leave to appeal our decision in *Rush* is currently pending in the Supreme Court.

the law . . . ." *Id*. at 195. See also *Robinson v Detroit*, 462 Mich 439, 463; 613 NW2d 307 (2000), quoting *Hohn v United States*, 524 US236, 251; 118 S Ct 1969; 141 L Ed 2d 242 (1998) ("Stare decisis is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.") (citation and internal quotation marks omitted).[12]

Consequently, if the Supreme Court elects to overturn or further erode *Hall*, I would respectfully suggest that the people of Michigan deserve a clear and cogent articulation of why legal adults (or even minors) are categorically deemed under the law to be of sufficient maturity to exercise decision-making in the most weighty and consequential matters they will confront in our society during their lifetimes—with respect to such matters as voting, entering into marriage, entering into binding contracts, making a will, aborting the unborn, engaging in procreative activity, or taking measures to alter one's gender—but are not similarly deemed to be of sufficient maturity to be held accountable for the most grievously-imaginable criminal wrongdoing.

It takes little imagination to foresee that the next scientific studies that will make their way into appellate briefing may posit that the human brain continues to develop until the age of 30, or perhaps 35, or possibly 60, or that in fact we all continue to develop and mature in our decision-making capabilities until we take our last breath.[13] All the more reason for the judiciary to leave the evaluation of such matters to the people's policy-making representatives (who also should consider the need for consistency in the law), as Justice Scalia suggested in *Roper*, rather than for those of us in black robes to issue pronouncements that override them.

For these reasons and those set forth by the majority, I agree that defendant's mandatory life-without-parole sentence for first-degree murder does not violate the constitutional prohibition of cruel or unusual punishment, and I concur in affirming defendant's sentence.

/s/ Mark T. Boonstra

---

[12] The law thus stands in stark contrast to the world of politics, where hypocrisy and inconsistency sometimes can abound.

[13] Other studies may posit that the human brain *declines* after the age of 80, or 70, or 60, or some other age, which may then suggest that we should also institute a corresponding mitigation-of-responsibility effect on the opposite (high) end of the age continuum.