*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DARRELL SEMAJ BANKS, JR.,

Defendant-Appellant.

UNPUBLISHED
February 14, 2025
12:20 PM

No. 366051
Macomb Circuit Court
LC No. 2021-001396-FC

Before: BOONSTRA, P.J., and M. J. KELLY and MALDONADO, JJ.

PER CURIAM.

Defendant appeals by right his jury convictions of two counts of first-degree premeditated murder, MCL 750.316(1)(a), and two counts of possessing a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to two concurrent prison terms of life without parole for the murder convictions, to be served consecutively to two concurrent two-year terms of imprisonment for the felony-firearm convictions. We affirm.

## I. FACTUAL OVERVIEW

Defendant's convictions arise from the January 22, 2021, shooting deaths of Dionna Davis and Dazhane Holloway in the parking lot of a Clinton Township apartment complex. The prosecutor theorized that defendant and his codefendant, Dajuan Davenport, "ambushed" the victims and carried out "a hit" while the victims were unloading groceries from the trunk of a car. A 911 caller reported shots fired at the complex and described two men, one wearing dark clothing and one wearing a yellow sweatshirt, running to a dark-colored Dodge Charger and speeding away. Two other residents at the apartment complex testified at the trial, and they both described hearing shots from two guns and then seeing and hearing a Dodge sports car drive away.

The speeding Charger was quickly found by police, and the ensuing high-speed chase ultimately ended with the Charger crashing into a utility pole. Defendant was sitting on the passenger side wearing a yellow sweatshirt, and Davenport was on the driver's side. In addition to the injuries that defendant and Davenport suffered during the car crash, defendant had a gunshot wound in his leg. The prosecutor theorized that the gunshot wound was the result of "friendly fire" that occurred as defendant and Davenport were shooting at the victims. Among the items

recovered from the car, the police found an FN handgun and an AR-15 rifle. Expert testimony indicated that the rounds and shell casings found at the scene had been fired from these two guns. Defendant's DNA was found on the rifle, and Davenport's DNA was found on the handgun.

The prosecution argued that defendant and Davenport acted in concert to plan, execute, and escape the scene of the shooting. In contrast, both defendants argued that they just happened to be present when the shooting occurred and that there was insufficient evidence to prove beyond a reasonable doubt that they were the shooters. While defendant remained silent, Davenport testified in his own defense. According to Davenport, he and defendant were merely present at the apartment complex when the shooting occurred, and defendant's gunshot wound was the result of being caught in the crossfire. Davenport testified that the shooters fled on foot, leaving their vehicle unlocked and running. Davenport and defendant then took the vehicle and drove off at a high rate of speed in order to get defendant to a hospital. The jury convicted defendant and Davenport as charged.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that defense counsel was ineffective for failing to investigate and present a witness who could have supported a self-defense claim and for failing to move to sever his trial from Davenport's trial. We disagree.

Claims of ineffective assistance of counsel present mixed questions of fact and law. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). Factual findings are reviewed for clear error and legal conclusions are reviewed de novo. *Id*.

"To prevail on a claim of ineffective assistance, a defendant must, at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness and (2) a reasonable probability exists that the outcome of the proceeding would have been different but for trial counsel's errors." *Id*. at 539 (quotation marks, citation, and alteration omitted). "[A] reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). This Court presumes counsel was effective, and defendant carries a heavy burden to overcome this presumption. *Head*, 323 Mich App at 539.

## A. RUTHALEEN HARRIS'S POLICE STATEMENT

Defense counsel did not err by declining to have Ruthaleen Harris testify because her statement could not have supported a viable claim of self-defense.

"Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy." *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Traver (On Remand)*, 328 Mich App 418, 422-423; 937 NW2d 398 (2019). However, "a sound defense strategy cannot follow an incomplete investigation of the case when the decision to forgo further investigation was not supported by reasonable professional judgment." *People v Trakhtenberg*, 493 Mich 38, 55; 826 NW2d 136 (2012).

Defendant argues that a viable self-defense claim could have been advanced if defense counsel had summoned Ruthaleen Harris to testify. Harris was in her car in the parking lot at the time of the shooting, and she gave a statement to the police. This statement was then recorded in the police report. In the report, Harris described seeing two men firing guns. She also described a woman running toward the apartment building while another person attempted to open a car. According to the report,

> She said she saw a male standing near the front driver's side of her car, with a large gun (she held her hand about a foot apart to show the size) and it sounded like a machine gun. The male was wearing a dark gray sweatshirt. She thought he was shooting at a person who appeared to be firing a handgun at the female.

Defendant argues that, on the basis of Harris's police statement, her testimony would have "undercut the prosecutor's case theory" and supported a self-defense claim, because "[s]he told police that two men were shooting at each other."

First, defendant, has completely mischaracterized Harris's statement. Harris described what appeared to be one man shooting a handgun at a woman while a second man shot a "large gun" at the first man. Nothing in Harris's statement suggests that the two men were shooting at each other. Second, Harris's testimony would have likely bolstered the prosecution's theory that defendant was shot in the leg by friendly fire while both defendants were shooting at the victims. Indeed, the evidence demonstrated that defendant's DNA was found on one murder weapon, that Davenport's DNA was found on the other murder weapon, that Davis suffered multiple gunshot wounds, and that Davis was shot by "[t]wo different weapons, two different pieces of ammunition[.]"

Finally, even assuming arguendo that defendant characterized Harris's statement with total accuracy, he has failed on appeal to put forth a cogent claim of self-defense. Defendant simply stated that Harris saw two men shooting at each other, and therefore, defendant acted in self-defense. However, neither of the men died; rather, two young women did. Defendant has not even attempted to explain how evidence that two men were shooting at each other means that the two women were shot in self-defense. There is no suggestion that either of them were engaged in any sort of aggressive behavior or that they were even armed. If defendant is attempting to imply that he accidentally shot two different people while defending himself against another shooter, then he is advocating for a theory that no reasonable attorney would advance. Further, if defendant is insinuating that he was defending himself against the other shooter, the DNA evidence suggests that he would have been defending himself against Davenport; however, he and Davenport then proceeded to drive away together in the Dodge Charger, without summoning help for the two women who were shot. No reasonable attorney would concede that defendant shot the victims in order to advance such a nonsensical theory.

Therefore, defendant cannot establish ineffective assistance arising from defense counsel's decision not to have Harris testify.

## B. FAILURE TO MOVE FOR SEVERANCE

Because defendant was not entitled to have his trial severed from Davenport's, this claim of error cannot serve as the basis for an ineffective assistance claim.

"The decision to try two defendants jointly or separately lies within the discretion of the trial court, and that decision will not be overturned absent an abuse of that discretion." *People v Furline*, 505 Mich 16, 20; 949 NW2d 666 (2020). Severance is mandated pursuant to MCR 6.121(C) only when a defendant demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice. *Id*. at 21. In order to make this showing, a defendant must provide the court with a supporting affidavit, or make an offer of proof, showing that the defenses are so inconsistent, mutually exclusive, and irreconcilable that it "clearly, affirmatively, and fully demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice." *People v Hana*, 447 Mich 325, 346; 524 NW2d 682 (1994).

Defendant's argument in favor of mandatory severance is tied to his argument regarding the failure to advance a self-defense claim. According to defendant, self-defense was irreconcilable with Davenport's account so, in addition to advancing this argument, defense counsel should have sought severance of the trial. It is true that Davenport's wrong-place-wrong-time defense cannot be reconciled with defendant's proposed self-defense claim. However, as detailed above, no reasonable attorney would have pursued defendant's proposed self-defense claim. Therefore, it follows that no reasonable attorney would have sought severance of the trial in order to pursue such a claim.

Defendant also argues that defense counsel should have pursued discretionary severance on the basis of Davenport's unbelievable testimony. MCR 6.121(D) provides that "the court may sever the trial of defendants on the ground that severance is appropriate to promote fairness to the parties and a fair determination of the guilt or innocence of one or more of the defendants." Defendant argues that Davenport's "bold, fantastic claims" caused the jury to find defendant "guilty by association" because Davenport made defendant "look like a liar." Defendant specifically notes that Davenport claimed ignorance of how the key to the Dodge Charger wound up in his pocket and Davenport's insistence that the gun in the Charger was not his despite a photo being admitted showing him with an identical gun.

Davenport's claim that the actual shooters tossed their guns into a running car and then fled on foot so that he and defendant could commandeer the car and lead a high-speed chase to the hospital was, at best, remarkable; this we cannot dispute. However, the evidence nearly-irrefutably established that defendant and Davenport led a high-speed chase in a stolen vehicle, that the murder weapons were in the subject vehicle, and that their DNA was on the murder weapons. Only a remarkable claim could reconcile this evidence with innocence. The alternative of passively hoping that the jury would find a needle of doubt in this haystack of evidence could not have seemed more appealing to defense counsel than allowing Davenport to attempt to offer some sort of explanation. At worst, this was an example of "spillover prejudice" that "is almost inevitable" when there is a joint trial. *Hana*, 447 Mich at 349 (quotation marks and citation omitted).

Therefore, defendant cannot establish ineffective assistance stemming from defense counsel's decision not to seek severance of the trial.

## III. MISTRIAL

Defendant argues that the trial court erred by failing to grant his motion for a mistrial based on several alleged errors. We disagree.

A trial court's decision on a motion for a mistrial is reviewed for an abuse of discretion. *People v Boshell*, 337 Mich App 322, 335; 975 NW2d 72 (2021). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *Id.* at 339 (quotation marks and citation omitted). A "mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant, and impairs his ability to get a fair trial." *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995) (citations omitted). Stated differently, "[a] mistrial should be granted only where the error complained of is so egregious that the prejudicial effect can be removed in no other way." *People v Gonzales*, 193 Mich App 263, 266; 483 NW2d 458 (1992).

We note that, while defendant opens his arguments regarding the mistrial issue with citations to MRE 403, there are points when he seems to suggest that a mistrial was warranted on the basis of prosecutorial misconduct. However, "[a] prosecutor's good-faith effort to admit evidence does not constitute misconduct." *People v Dobek*, 274 Mich App 58, 70; 732 NW2d 546 (2007). Therefore, to the extent defendant argues that the prosecutor engaged in misconduct by attempting to admit evidence, this argument is without merit.

### A. CRIME SCENE PHOTOGRAPHS DEPICTING A CHILD CAR SEAT

Prior to trial, the court ruled that the prosecution could not make any references to the fact that a child was present at the time of the shooting, but it allowed admission of a crime scene photograph in which a child's car seat was visible. Defendant argues that, using this photograph, "the jury could infer that an infant was present." This argument is without merit.

The decision to admit photographic evidence is within the sole discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion. *Head*, 323 Mich App at 539-540. The question is whether a photograph is relevant under MRE 401, and, if so, whether its probative value is substantially outweighed by the danger of unfair prejudice pursuant MRE 403. *People v Mills*, 450 Mich 61, 67-68; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401.[1] Photographs that are calculated solely to arouse the sympathies and prejudices of the jury may not be admitted. *People v Howard*, 226 Mich App 528, 549; 575 NW2d 16 (1997).

---

[1] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See 512 Mich lxiii (2023). This opinion relies on the version of MRE 401 in effect at the time of trial.

As the trial court reasoned, it does not follow from the presence of a car seat that there was a child present at the time of the shooting. The logic behind the court's following statement was sound:

> As I understand it, most parents many parents [sic] leave car seats in their car all the time. It's not something that you take in and out once the child is at the age of this child, which is 18 months, it's not a car carrier where I would be transporting a baby back and forth from the car in that apparatus.

The photograph implied that at least one of the victims was a parent, but we know of no authority suggesting that courts must take caution to avoid apprising the jury of a crime victim's familial relations. Further, defendant does not dispute that the photographs were used to demonstrate bullet trajectory, and the court was justifiably concerned that blacking out the image of the car seat would only cause confusion. Therefore, we discern no error arising from admission of this photograph.

## B. PROSECUTOR'S FAILURE TO TIMELY REDACT A 911 CALL

Before the testimony of prosecution witness Benjamin Pultorak, the trial court granted defendant's and Davenport's request to preclude Pultorak from referencing a prior unrelated shooting at the apartment complex. As a result, the prosecutor also arranged to have Pultorak's 911 call redacted to eliminate any reference to the prior shooting. Defendant now argues that by "failing to timely and properly edit the call," "the prosecutor misled the jury into thinking that the defense team wanted to distract the jury from the truth."

While a prosecutor may not suggest that defense counsel is intentionally attempting to mislead the jury, *People v Watson*, 245 Mich App 572, 592; 629 NW2d 411 (2001), defendant's argument lacks merit. First, defendant's objection and the parties' discussion on the matter occurred outside the presence of the jury. Further, regarding the timing of the redaction, the prosecutor explained that, because this matter was not brought up before trial, he "had to edit [the reference to the prior shooting] out [of] the 911 call," which later was accomplished during a break. The prosecutor's handling of the redaction of the 911 call did not suggest that counsel was intentionally attempting to mislead the jury but fairly handled the redaction of evidence to be presented during trial.

Furthermore, immediately before Pultorak was called as a witness, the trial court instructed the jury as follows:

> [S]ometimes as you noticed in Ms. Archer miss [sic] testimony, when the dispatcher asked her phone number you didn't hear the phone number. There are certain redactions are made and for various reasons. *And you're not to give any weight to the fact that there may be a redaction or you have a time of dead space while you are listening to audio*. [Emphasis added.]

The trial court's instructions were sufficient to dispel any possible prejudice and to protect defendant's substantial rights. *People v Long*, 246 Mich App 582, 588; 633 NW2d 843 (2001). Jurors are presumed to have followed their instructions, *Breidenbach*, 489 Mich at 13, and defendant has not provided any basis for concluding that the jurors failed to do so in this regard.

-6-

Finally, defendant criticizes the prosecutor for not editing the recording before trial, instead "forcing the defense team to object" so that the jury would believe "the defense team wanted to distract the jury from the truth." However, we know of no authority suggesting that a prosecutor must anticipate which objections a defendant might raise and proactively rectify them. Further, defendant ignores the fact that the defense team could have addressed this matter before trial rather than waiting immediately before admission of the evidence. Finally, we do not see why an objection from defense counsel would cause the jury to believe that it is being distracted from the truth.

## C. PULTORAK'S TESTIMONY REGARDING A PRIOR SHOOTING

Prior to Pultorak's testimony, the court ruled that he could not make any references to prior shootings that had occurred in the area. Pultorak wound up making a pair of vague references to the prior shootings, but neither was elicited by the prosecution. In one instance during direct examination, Pultorak was explaining why he believed he had heard gunfire and began to mention a prior incident. The prosecutor immediately intervened, stopped Pultorak, and requested that the jury be excused. Outside of the presence of the jury, the prosecutor explained that he "anticipated" inadmissible testimony and "want[ed] to clear it up." As a result of the prosecutor's intervention, the trial court instructed Pultorak not to testify about the prior shooting. In another instance, Pultorak testified that he was not frightened when he called 911 because hearing gunfire in the area was not uncommon. Again, the prosecutor did not elicit, and Pultorak did not specifically testify, that there was a prior shooting at the apartment complex. Defendant argues that "the jury was induced to believe that the decedents' death was part of some larger violent pattern" and that defendant was "more deserving of punishment" for contributing to this violent pattern. However, Pultorak never explicitly testified that there was a shooting at that location before, and more importantly, Pultorak never in any way suggested that defendant was somehow involved with a prior shooting. Therefore, this argument is without merit.

## D. AUDIENCE REACTION

Finally, defendant makes a strained argument suggesting that a mistrial is warranted because "audience members cried out when the prosecutor admitted photographs of the decedents." Defendant suggests that "the audience reaction would have elicited unwarranted sympathy for the decedents" and that this sympathy would have pressured the jury to convict. Defendant fails to support this argument with citations to the record or any sort of authority. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority." *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004). Providing an issue with only "cursory treatment constitutes abandonment of the issue." *Id*. Therefore, this issue is abandoned. Regardless, it is readily apparent that a defendant is not

entitled to a mistrial because of a spontaneous display of grief from a member of the public, over whom the court and prosecutor have no control.[2]

## IV. CRUEL OR UNUSUAL PUNISHMENT

In his last claim on appeal, defendant, who was 19 years old at the time of the offense, argues that his mandatory life sentence for first-degree murder is cruel or unusual. We disagree.

We review constitutional issues de novo. *People v Parks*, 510 Mich 225, 245; 987 NW2d 161 (2022).

The United States Constitution prohibits "cruel and unusual" punishment, US Const, Am VIII, while the Michigan Constitution prohibits "cruel or unusual" punishment, Const 1963, art 1, § 16. Our Supreme Court has long held that the state constitutional prohibition on "cruel or unusual" punishment provides greater protection than its federal counterpart. See *People v Stovall*, 510 Mich 301, 313-314; 987 NW2d 85 (2022), citing *People v Bullock*, 440 Mich 15, 30-35; 485 NW2d 866 (1992). Thus, if a punishment "passes muster under the state constitution, then it necessarily passes muster under the federal constitution." *People v Nunez*, 242 Mich App 610, 618 n 2; 619 NW2d 550 (2000). The Michigan Legislature has mandated a sentence of life imprisonment without the possibility of parole for adult offenders who commit the crime of first-degree murder. MCL 750.316. In *People v Hall*, 396 Mich 650, 657-658; 242 NW2d 377 (1976), our Supreme Court upheld the life-without-parole sentence mandated by MCL 750.316 for felony murder, under both the United States and Michigan Constitutions. The Court expressly rejected the defendant's assertions that a mandatory life sentence under MCL 750.316 violates US Const, Am VIII, prohibiting "cruel and unusual" punishment, and Const 1963, art 1, § 16, forbidding "cruel or unusual" punishment. The Court found that "the punishment exacted is proportionate to the crime," that no indication existed that "Michigan's punishment is widely divergent from any sister jurisdiction," and that the sentence served the Legislature's permissible goal to deter similar conduct by others. *Hall*, 396 Mich at 658.

More recently, in *Parks*, 510 Mich at 268, our Supreme Court held that "mandatorily subjecting 18-year-old defendants convicted of first-degree murder to a sentence of life without parole violates the principle of proportionality derived from the Michigan Constitution . . . and thus constitutes unconstitutionally cruel punishment under Const 1963, art. 1, § 16." After *Parks* was decided, this Court addressed whether that decision may be applied to 19-year-old offenders, *People v Czarnecki (On Remand; On Reconsideration)*, ___ Mich App ___; ___ NW3d ___ (2023) (Docket No. 348732), oral argument ordered on the application ___ Mich ___ (2024) (Docket No. 166654), and 21-year-old offenders, *People v Adamowicz (On Second Remand)*, 346 Mich App 213; 12 NW3d 35 (2023), who were convicted of first-degree murder and sentenced to mandatory life without parole.

---

[2] Defendant argues that the cumulative effect of these errors deprived him of a fair trial, but if no errors have been established, "there can be no cumulative effect of errors meriting reversal." *Dobek*, 274 Mich App at 106.

In *Czarnecki*, this Court considered "whether the defendant's mandatory sentence of life without parole for a murder committed at the age of 19 is cruel or unusual punishment under Const 1963, art 1 § 16." *Czarnecki*, ___ Mich App at ___; slip op at 1. This Court noted that before our Supreme Court decided *Parks*, it upheld the "constitutionality of a sentence of life without parole for a defendant convicted of felony murder, expressly rejecting the defendant's argument that such a sentence constitutes cruel or unusual punishment under Const 1963, art 1 § 16" in *Hall*, 396 Mich 657-658. *Czarnecki*, ___ Mich App at ___; slip op at 2. This Court further observed that, in *Parks*, our Supreme Court specifically stated that its holding "does not affect the holding in *Hall* as to those older than 18." *Czarnecki*, ___ Mich App at ___; slip op at 2, quoting *Parks*, 510 Mich at 255 n 9. Accordingly, this Court held that "*Hall*'s holding continues to apply to those older than 18." *Czarnecki*, ___ Mich App at ___; slip op at 2. This Court stated that "[t]his understanding of *Parks* and *Hall* is consistent with this Court's recent decision in *Adamowicz (On Second Remand)*, where this Court held that *Hall* compelled the conclusion that subjecting a 21-year-old defendant to a mandatory sentence of life without the possibility of parole did not constitute cruel or unusual punishment under the Michigan Constitution." *Czarnecki*, ___ Mich App at ___; slip op at 2.

Thus, as defendant recognizes, this Court has considered and rejected his same constitutional argument in *Czarnecki*. Defendant has failed to present any basis for distinguishing *Czarnecki*, which this Court is bound to follow under MCR 7.215(J)(1). Further, although, as defendant notes, our Supreme Court has granted oral argument on the application for leave to appeal in *Czarnecki*, the fact remains that *Czarnecki* is binding on this Court at this time, and its precedential effect has not been diminished. See MCR 7.215(C)(2). Accordingly, we reject defendant's argument that his mandatory life-without-parole sentence for first-degree premeditated murder is unconstitutionally cruel or unusual.

Affirmed.

/s/ Mark T. Boonstra
/s/ Michael J. Kelly
/s/ Allie Greenleaf Maldonado